**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| CRAIG CUNNINGHAM, | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO.  4:18-CV-00118-ALM- |
| | § | CAN |
| v. | § | |
| | § | |
| MARK D. GUIDUBALDI AND | § | |
| ASSOCIATES, LLC, ET AL., | § | |
| | § | |
| Defendants. | | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Pending before the Court is Defendants Mark D. Guidubaldi & Associates, LLC d/b/a Protection Legal Group ("PLG"), Law Office of Sanford J. Feder, LLC ("Feder Law Office"), and Sanford J. Feder, Esq.'s ("Feder") (collectively "Defendants") "Motion to Dismiss and to Strike Plaintiff's 'Amended Complaint'" [Dkt. 30].  After reviewing the Motion to Dismiss [Dkt. 30], Plaintiff's Response [Dkt. 32], and all other relevant filings, the Court recommends that Defendants' Motion to Dismiss be **GRANTED IN PART AND DENIED IN PART**.

**BACKGROUND**

This case involves alleged violations of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.  Plaintiff Craig Cunningham ("Plaintiff"), proceeding *pro se*, filed his original Complaint on February 20, 2018, against Defendants [Dkt. 1].[1]  On May 1, 2018, Defendants filed their "Motion to Dismiss and to Strike Plaintiff's 'Original Complaint'" [Dkt. 14] ("First Motion to Dismiss").  The Court set the First Motion to Dismiss for hearing on June 20,

---

[1] Plaintiff's suit originally included additional Defendants Cashflow Care, LLC, Mark D. Guidubaldi, Esq., and Law Office of Mark D. Guidubaldi, LLC; these Defendants were subsequently dismissed by Plaintiff, leaving only the moving Defendants and Defendant Corporate Bailout, LLC, who has not yet been served in this action [*see* Dkt. 29].

2018 [Dkt. 23].  At hearing, Plaintiff requested an opportunity to amend his Complaint.  The Court granted Plaintiff's request and the Parties agreed that, as a result, Defendants' First Motion to Dismiss would be rendered moot.  On July 11, 2018, Plaintiff filed his Amended Complaint, the live pleading [Dkt. 24].  Defendants again moved to dismiss Plaintiff's claims, filing the instant "Motion to Dismiss and to Strike Plaintiff's 'Amended Complaint'" on September 19, 2018 ("Second Motion to Dismiss") [Dkt. 30].  Plaintiff filed his Response in opposition to the Second Motion to Dismiss on October 19, 2018 [Dkt. 32].

### The Amended Complaint

Plaintiff alleges in his Amended Complaint that Defendants breached the TCPA by "placing automated calls or calls with pre-recorded messages without Plaintiff's consent to the Plaintff's cell phone" [Dkt. 24 at 16].  Plaintiff contends that "[t]he calls were either made by the corporate entity defendants individually or by corporate entity defendants acting on behalf of and at the direction of [PLG, Feder Law Office, Feder, and other dismissed defendants]" [Dkt. 24 at 3]. Plaintiff additionally asserts a cause of action for invasion of privacy [Dkt. 24 at 16].  Plaintiff alleges that Defendants "all operate in a common enterprise to offer debt relief services and are alter egos of each other" [Dkt. 24 at 4]; and therefore, should be held vicariously, directly, jointly, and severally liable for the actions of one another [Dkt. 24 at 11-12].

## ANALYSIS

Defendants advance three grounds for the dismissal of Plaintiff's claims: (1) Plaintiff lacks standing [Dkt. 30 at 3]; (2) no personal jurisdiction exists over Defendants Feder Law Office and Feder [Dkt. 30 at 8]; and (3) Plaintiff fails to state a claim [Dkt. 30 at 6].

*Standing and* **Spokeo**

Defendants argue Plaintiff lacks standing because he has not suffered a concrete and particularized injury.  Defendants go on to contend that "Plaintiff is [a] 'professional plaintiff,' similar to the plaintiff in [*Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782 (W.D. Pa. 2016)], [and] [Plaintiff] should not be afforded the protections provided under the TCPA" [Dkt. 30 at 5].

Standing is a threshold jurisdictional requirement.[2]  "To establish Article III standing, a plaintiff must show: (1) an injury in fact that is (2) fairly traceable to the defendant's challenged conduct, and that (3) a favorable judicial decision will likely redress the injury." *Texas v. United States*, 300 F. Supp. 3d 810, 826 (N.D. Tex. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  As this Court has noted previously in *Cunningham v. Florio*, 2018 WL 4677801 (E.D. Tex. 2018), Congress cannot convert a generalized grievance into an individual right for standing purposes. *See Lujan*, 504 U.S. at 577.  But Congress can create "legal rights, the invasion of which creates standing, even though no injury would exist without the statute." *RITE—Research Improves Env't, Inc. v. Costle*, 650 F.2d 1312, 1320 (5th Cir. 1981) (quoting *Linda R. S. v. Richard D.*, 410 U.S. 614, 617 n.3 (1973)).  "Thus, where a statute confers new legal rights on a person, that person will have Article III standing to sue where the facts establish a concrete, particularized, and personal injury to that person as a result of the violation of the newly created legal rights." *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 781 F.3d 1245, 1251 (11th Cir. 2015).

The TCPA makes it unlawful to make calls using an artificial or prerecorded voice to any telephone number assigned to a residential telephone line.  47 U.S.C. § 227(b)(1)(B).  The TCPA also makes it unlawful for a caller to make telephonic solicitations to a residential telephone number listed on the federal do-not-call registry.  47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c).

---

[2] Defendants have brought a 12(b)(1) challenge in attacking Plaintiff's standing to bring this case.

This provides individuals with a legal right to be free from the intrusion of such calls.  At issue is whether Plaintiff suffered a concrete, particularized, and actual or imminent injury (i.e., an injury in fact) resulting from Defendants' alleged violation of this right.

Defendants cite the Supreme Court opinion, *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016) to support their assertion that Plaintiff has not satisfied the "injury-in-fact demands of Article III." The Court reasoned in *Spokeo*—a Fair Credit Reporting Act ("FCRA") case—that "[a] violation of one of the FCRA's procedural requirements may result in no harm. . . . [and] not all inaccuracies cause harm or present any material risk of harm." *Id.* at 1550.  Thus, there must be some concrete harm; it must actually exist.  *Id.* at 1548.  "Courts considering harm in connection with TCPA claims have noted that 'one of the purposes of the TCPA was to protect telephone subscribers from the 'nuisance' of unwanted calls.'"  *Martin v. Leading Edge Recovery Sols., LLC*, No. 11 C 5886, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012); *see also Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017) ("Unwanted telemarketing can be a 'nuisance' and 'an intrusive invasion of privacy.'") (quoting *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012) (quoting TCPA, 105 Stat. 2394, note following 47 U.S.C. § 227)).

"Where, as here, a case is at the pleading stage, the plaintiff must 'clearly. . . allege facts demonstrating' each element" required to establish standing.  *Spokeo*, 136 S.Ct. at 1547 (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)).[3]  Plaintiff alleges in his Amended Complaint that: (1) he received at least 105 calls from Defendants to his four phone numbers [Dkt. 24 at 7];[4]

---

[3] By contrast at the summary judgment stage, Plaintiff would be required to set forth by affidavit or other evidence "specific facts" of injury resulting from Defendants' conduct.  *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 577 (1992).

[4] Although Plaintiff states in his Response that "Plaintiff has not admitted to having 4 cell phone numbers" [Dkt. 32 at 2], Plaintiff's Amended Complaint seemingly alleges that he is pursuing TCPA claims based on calls to four separate cell phone numbers [Dkt. 24 at 7-9].

(2) "[t]hese are annoying calls, which are being placed as part of a nationwide telemarketing campaign" in violation of the TCPA" [Dkt. 24 at 10]; and (3) "[a]n ordinary person would be offended by these practices and receiving over 100 calls" [Dkt. 24 at 16].[5]   The Court finds that because Plaintiff pleads the existence of concrete, particularized injuries, however small or trifling, the Amended Complaint will not be dismissed on this basis.  *See Jamison v. Esurance Ins. Servs., Inc.*, No. 3:15-CV-2484-B, 2016 WL 320646, at *2–3 (N.D. Tex. Jan. 27, 2016) (finding an injury-in-fact at the pleading stage when plaintiff suffered an occupation of his telephone line); *Morris*, 2016 WL 7115973, at *6 (finding an injury-in-fact where Plaintiff was annoyed and harassed by unwanted telemarketing calls); *Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d at 1197 (finding an injury-in-fact at the pleading stage when plaintiff alleged harassment and annoyance at receiving telemarketing calls); *Postle v. Allstate Ins. Co.*, No. 17-cv-07179, 2018 WL 1811331, at *2 (N.D. Ill. Apr. 17, 2018) ("[Plaintiff's] claim that his privacy was violated as a result of the call he received—the alleged TCPA violation by [defendant]—is sufficient, in and of itself, to establish a concrete injury under Article III."); *Susinno v. Work Out World, Inc.*, 862 F.3d 346, 351(3rd Cir. 2017) ("[I]n asserting 'nuisance and invasion of privacy' resulting from a single prerecorded telephone call, [plaintiff's] complaint asserts 'the very harm that Congress sought to prevent,' arising from prototypical conduct proscribed by the TCPA.").

---

[5] "The House of Representatives Report associated with the TCPA clearly states that '[t]he purpose of the bill (H.R. 1304) is to protect residential telephone subscriber privacy rights.' The Report discusses the possibility that, in some instances, 'automatic dialing systems can "seize" a recipient's telephone line and not release it until the prerecorded message is played, even when the called party hangs up.' From this, the Court concludes that an individual may also suffer an injury in fact from unauthorized telephone contact when it causes an occupation of the telephone line or an invasion of privacy."  *Morris v. Unitedhealthcare Ins. Co.*, Civil Action No. 4:15-CV-00638-ALM-CAN, 2016 WL 7115973, at *5 (E.D. Tex. Nov. 9, 2016), *report and recommendation adopted,* 4:15-CV-638, 2016 WL 7104091 (E.D. Tex. Dec. 6, 2016) (Mazzant, J.) (quoting H.R. Rep. No. 102-317, at 5).

Defendants additionally argue that Plaintiff lacks standing because he does not fall in the zone of interest protected by the TCPA:

> The Plaintiff fails to demonstrate the likelihood that a favorable decision will redress the alleged injuries.  This is because the Plaintiff in this instance did not suffer any real harm.  As a serial TCPA litigator, as evidenced by his failure to register his number with the national do not call list, the number of cell phone numbers that he uses and the sheer amount of TCPA lawsuits filed by the Plaintiff, the Plaintiff seeks out any opportunity to file a TCPA lawsuit so that he can make money by taking advantage of the generous penalties granted under the TCPA.  In fact, the Plaintiff is likely taking certain steps to insure that he receives as many telemarketer calls as possible (as demonstrated by [the sheer] amount of TCPA lawsuits filed by the Plaintiff and the amount of settlements he has received by defendants unrelated to this action).  The Court in *Stoops* said that because the plaintiff's "only purpose in using her cell phones is to file TCPA lawsuits, the calls are not "a nuisance and an invasion of privacy."  Based on the forgoing, this Court should apply the *Stoops* analysis in this instance, and find that the Plaintiff does not have standing.

[Dkt. 30 at 5 (internal citations omitted)].

The zone of interest test asks whether a particular class of persons has a right to sue under a particular statute; the test denies a right of review if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Evans v. Nat'l Auto Div., LLC*, No. 15-8714, 2016 WL 4770033 (D.N.J. Sept. 13., 2016) (citing *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 126-27 (2014)).  Defendants cite to *Stoops v. Wells Fargo Bank, N.A.*, 197 F. Supp. 3d 782, 800 (W.D. Pa. 2016) as an example of a similar case where a federal court found that a plaintiff's interests did not fall within the zone of interests protected by the TCPA.  In *Stoops*, the court found that the plaintiff did not suffer a true nuisance or an invasion of her privacy because she admitted that her only purpose in using her cell phones was to file TCPA lawsuits.  197 F. Supp. 3d at 800.  The plaintiff in *Stoops*, who resided in Pennsylvania, purchased and maintained over thirty cell phones with Florida telephone numbers because she knew the

locations she selected were economically depressed and included people who would be defaulting on their loans or their credit cards. *Id.* at 798-800. The plaintiff waited for the phones to ring; she sometimes answered the calls and told the callers to stop, but she testified her hope was that the calls would continue so she could treble her damages. *Id.*

*Stoops* is distinguishable from this case given that the plaintiff in that case, *at the summary judgment stage and after discovery*, expressly acknowledged that she only purchased the cell phones at issue for the purpose of receiving automated telemarketing calls and subsequently filing TCPA suits. Even if this Court were to adopt the reasoning set forth in *Stoops*, there is no evidence in this case suggesting Plaintiff obtained the phone numbers at issue solely for TCPA purposes. *See Cunningham v. Capital Advance Solutions*, LLC, No. 17-13050 (FLW), 2018 WL 6061405, at \*4-5 (D.N.J. Nov. 20, 2018) (unlike *Stoops*, the parties, here, are in the beginning stages of litigation).[6] Rather, the parties here are in the beginning stages of litigation, and while it is evident that Plaintiff has pursued a substantial amount of TCPA cases, such assertion standing alone does not raise Plaintiff to the level of "professional plaintiff" as described in *Stoops*, such that he is outside the zone of interest. *See Morris v. Unitedhealthcare Ins. Co.*, Civil Action No. 4:15-CV-00638-ALM-CAN, 2016 WL 7115973, at \*6 (E.D. Tex. Nov. 9, 2016); *Cunningham v. Rapid Response Monitoring Services, Inc.*, 251 F. Supp. 3d 1187, 1197 (M.D. Tenn. 2017) (rejecting the idea that, "by becoming a so-called 'professional plaintiff,' [plaintiff] has forfeited [his right to privacy] because the calls alleged were not truly unwanted"; *Evans*, No. CV 15-8714, 2016 WL

---

[6] Most courts interpreting *Stoops* appear to have done so narrowly and have not extended its holding to cases where the phone line or numbers at issue were not procured solely to receive telemarketing calls. *Abrahamson v. Oasis Power*, LLC, No. 2:18-cv-00479, 2018 WL 410857, at n. 4 (W.D. Pa. July 31, 2018) (citing *Greenley v. Laborers' Int'l Union of N. Am.*, 271 F. Supp. 3d 1128, 1139 (D. Minn. 2017) ("Here, by contrast [to Stoops], Greenley attests that he did not purchase the cellular telephone that [defendant] contacted for the sole purpose of initiating TCPA litigation."); *Sandusky Wellness Ctr., LLC v. Med Tox Scientific, Inc.*, 250 F. Supp. 3d 354, 358 (D. Minn. 2017) (same); *Evans v. Nat'l Auto Div., LLC*, Civ. No. 15-8714, 2016 WL 4770033, at \*3 (D.N.J. Sep. 13, 2016) ("*Stoops* is distinguishable from this case on the grounds that the plaintiff in that case acknowledged that she only purchased cell phones in order to file TCPA lawsuits.")).

4770033, at *3 ("As a consumer complaining of receiving intrusive telemarketing calls, Plaintiff

falls directly within the zone of interests protected by the TCPA"); *Abramson*, No. 2:18-cv-00479,

2018 WL 4101857, at *4  ("the Court rejects any suggestion that [plaintiff's] prolific history of

filing TCPA lawsuits distinguishes this case and demonstrates the lack of an injury in fact);

*Fitzhenry v. ADT Corp.*, No. 14-80180, 2014 WL 6663379, at *5 (S.D. Fla. Nov. 3, 2014)

("Although Plaintiff may have created a home environment that allows him to document

telemarketing calls better than most consumers, the Court is not convinced that Plaintiff is outside

of the TCPA's zone of interest."); *Mey v. Venture Data, LLC*, 245 F. Supp. 3d 771, 783 (N.D.W.

Va. 2017) ("It is true that the plaintiff has brought a number of TCPA cases. It is further true that

she has telephone answering and recording equipment[, but] [t]his does not deprive the plaintiff of

standing any more than the purchase of a burglar alarm would indicate that the homeowner wanted

her house to be broken into.").   The Court finds Plaintiff has asserted an injury in fact and

Defendant's Motion to Dismiss for lack of standing should be denied.[7]

### Personal Jurisdiction

In the live Complaint, Plaintiff contends that PLG is a corporation operating in Illinois

[Dkt. 24 at 1], Feder Law Office is a corporation operating in New Jersey [Dkt. 24 at 1], and Feder

is a New Jersey resident [Dkt. 24 at 2].  Plaintiff further avers that:

> This Court has personal jurisdiction over Defendants because Defendants conduct[]
> significant amounts of business within this District.  [PLG] is a Texas entity subject
> to the Court's personal jurisdiction.  Additionally, [Feder] and [Feder Law Office]
> conduct business in a common enterprise and joint venture with [PLG] and
> Corporate Bailout and Protection Legal Group, LLC pursuant to a contract and
> agreement with all of the above entities.  By doing business in Texas with a Texas
> based entity, placing calls to Texas Residents, including the Plaintiff, before and
> after the filing of a lawsuit, [Feder and the Feder Law Office] have subjected
> themselves to personal jurisdiction in Texas.

---

[7] The Court previously considered the arguments asserted herein regarding whether Plaintiff had standing under the
TCPA in *Cunningham v. Florio*, Civil Action No. 4:17-cv-00839, 2018 WL 4473792 at *2-5 (E.D. Tex. Aug. 6, 2018)
*report and recommendation adopted*, No. 4:17-cv-00839, 2018 WL 4473096 (E.D. Tex. Sept. 18, 2018).

[Dkt. 24 at 3].  Defendants argue that "[t]his Court does not have personal jurisdiction over the Law Office of Sanford J. Feder, LLC or Sanford J. Feder, Esq." [Dkt. 30 at 8].  Defendants do not contest that the Court  may exercise personal jurisdiction over Mark D. Guidubaldi & Associates, LLC d/b/a Protection Legal Group.

### Rule 12(b)(2) Standard

Federal Rule of Civil Procedure 12(b)(2) requires a court to dismiss a claim if the court does not have personal jurisdiction over the defendant.  "After a non-resident defendant files a motion to dismiss for lack of personal jurisdiction, it is the plaintiff's burden to establish that *in personam* jurisdiction exists." *Lahman v. Nationwide Provider Sols.*, No. 4:17-CV-00305, 2018 WL 3035916, at *4 (E.D. Tex. June 19, 2018) (Mazzant, J.) (citing *Bullion v. Gillespie*, 895 F.2d 213, 217 (5th Cir. 1990) (citing *WNS, Inc. v. Farrow*, 884 F.2d 200, 202 (5th Cir. 1989)). "To satisfy that burden, the party seeking to invoke the court's jurisdiction must 'present sufficient facts as to make out only a prima facie case supporting jurisdiction,' if a court rules on a motion without an evidentiary hearing." *Id.* (quoting *Alpine View Co. v. Atlas Copco AB*, 205 F.3d 208, 215 (5th Cir. 2000)).  "When considering the motion to dismiss, '[a]llegations in [a] plaintiff's complaint are taken as true except to the extent that they are contradicted by defendant's affidavits.'" *Id.* (quoting *Int'l Truck & Engine Corp. v. Quintana*, 259 F. Supp. 2d 553, 557 (N.D. Tex. 2003) (citing *Wyatt v. Kaplan*, 686 F.2d 276, 282–83 n.13 (5th Cir. 1982)); *accord Black v. Acme Mkts., Inc.*, 564 F.2d 681, 683 n.3 (5th Cir. 1977).  "Further, '[a]ny genuine, material conflicts between the facts established by the parties' affidavits and other evidence are resolved in favor of plaintiff for the purposes of determining whether a *prima facie* case exists.'" *Id.* (quoting *Quintana*, 259 F. Supp. 2d at 557 (citing *Jones v. Petty-Ray Geophysical Geosource, Inc.*, 954 F.2d 161, 1067 (5th Cir. 1992)).

### *General Jurisdiction*

"General jurisdiction exists only when the defendant's contacts with the forum state are so '"continuous and systematic"' as to render them essentially at home in the forum State." *Lahman*, 2018 WL 3035916, at *5 (quoting *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)); citing *Cent. Freight Lines v. APA Transp. Corp.*, 322 F.3d 376, 381 (5th Cir. 2003) (citing *Helicopteros*, 466 U.S. at 414 n.8)). "Substantial, continuous and systematic contact with a forum is a difficult standard to meet and requires extensive contacts between a defendant and the forum." *Id.* (citing *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008)). "[V]ague and overgeneralized assertions that give no indication as to the extent, duration, or frequency of contacts are insufficient to support general jurisdiction." *Id.* (quoting *Johnston*, 523 F.3d at 609 (citing *Gardemal v. Westin Hotel Co.*, 186 F.3d 588, 596 (5th Cir. 1999))). "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Arrow Elecs., Inc. v. Fireracker, LLC*, No. 4:17-CV-00895, 2018 WL 1761883, at *2 (E.D. Tex. Apr. 12, 2018) (Mazzant, J.) (quoting *Daimler*, 571 U.S. at 127 (citing *Goodyear*, 564 U.S. at 919)); *see also Clement Grp., LLC  v. ETD Servs., LLC.*, No. 4:16-CV-00773, 2017 WL 2972877, at *3 (E.D. Tex. July 12, 2017) (Mazzant, J.) (same); *Yasinosky v. River Oaks Farms Inc.*, No. 4:17-CV-214-A, 2017 WL 2709736, at *2 (N.D. Tex. June 22, 2017) (same).

As mentioned *supra*, Plaintiff's Amended Complaint asserts that "[Feder] and the [Feder Law Office] conduct business in a common enterprise and joint venture with [PLG] and Corporate Bailout and Protection Legal group, LLC pursuant to a contract and agreement with all of the above entities.  By doing business in Texas with a Texas[-]based entity, placing calls to Texas

Residents, including the Plaintiff, before and after the filing of a lawsuit, the [Feder Defendants] have subjected themselves to personal jurisdiction in Texas" [Dkt. 24 at 3].  This is insufficient to demonstrate that the Feder Defendants have the continuous and systematic contacts with the State of Texas required for general personal jurisdiction.  *See Oldaker v. Johnson & Johnson, Inc.*, 3:13-CV-2159-O, 2013 WL 12126260, at *4–5 (N.D. Tex. Nov. 20, 2013) ("Plaintiff's general assertions that Ethicon LLC places its products into the stream of commerce and conducts business "within" Texas are insufficient to meet the requirements to establish general jurisdiction"); *see also Carruth v. Michot*, A-15-CA-189-SS, 2015 WL 6506550, at *7–8 (W.D. Tex. Oct. 26, 2015); *Cunningham v. Florio*, 417CV00839ALMCAN, 2018 WL 4473792, at *7 (E.D. Tex. Aug. 6, 2018), *report and recommendation adopted,* 4:17-CV-839, 2018 WL 4473096 (E.D. Tex. Sept. 18, 2018) ("Furthermore, a nonresident defendant's contacts must 'demonstrate a business presence in Texas,' and the Fifth Circuit has emphasized the distinction between 'doing business *with* Texas. . . [and] doing business *in* Texas.'") (quoting *Oldaker*, 2013 WL 12126260, at *4 (quoting *Access Telecom*, 197 F.3d at 717; citing *Johnston*, 523 F.3d at 611; *Jackson v. Tanfoglio Giuseppe, S.R.L.*, 615 F.3d 579, 585 (5th Cir. 2010); *Am. Univ. Sys., Inc. v. Am. Univ.*, 858 F. Supp. 2d at 713)).

The Feder Law Office is a limited liability company organized under and governed by the laws of New Jersey [Dkt. 24 at 2].  Plaintiff has not alleged that the Feder Law Office has employees, offices, or bank accounts in Texas.  Further, Plaintiff's allegation that the Feder Law Office entered into a contract with a Texas individual and entity, standing alone, is insufficient to establish general jurisdiction.  *See Evergreen Media Holdings, LLC v. Safran Co.*, 68 F. Supp. 3d 664, 674 (S.D. Tex. 2014) ("An out-of-state defendant that merely does business with Texas businesses or customers will not be subject to general jurisdiction if it does not have a lasting

physical presence in the state.") (citing *Best Little Promohouse in Texas LLC v. Yankee Pennysaver, Inc.*, 3:14-CV-1824-BN, 2014 WL 5431630, at *3 (N.D. Tex. Oct. 27, 2014) ) (Horan, J.) (citing *Access Telecom, Inc. v. MCI Telecommunications Corp.*, 197 F.3d 694, 717 (5th Cir. 1999)); see also *Florio*, 2018 WL 4473792, at *8.[8]  Similarly, the Court cannot maintain general personal jurisdiction over Feder as an individual.  "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Arrow Elecs., Inc. v. Fireracker, LLC*, No. 4:17-CV-00895, 2018 WL 1761883, at *2 (E.D. Tex. Apr. 12, 2018) (Mazzant, J.) (quoting *Daimler*, 571 U.S. at 127 (citing *Goodyear*, 564 U.S. at 919)).  It is undisputed that Feder is a resident of New Jersey; and accordingly, Feder is not "at home" in Texas and the Court may not exercise general personal jurisdiction over Feder.

### Specific Jurisdiction

"Specific jurisdiction is proper when the plaintiff alleges a cause of action that grows out of or relates to a contact between the defendant and the forum state." *Lahman*, 2018 WL 3035916, at *5 (citing *Helicopteros*, 466 U.S. at 414 n. 8).  "For the Court to exercise specific jurisdiction, the Court must determine[:] '(1) whether the defendant has. . . purposely directed its activities toward the forum state or purposely availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable.'" *Id.*

---

[8] The Court also notes that Plaintiff incorrectly identifies the Feder Law Office as a corporation in his Amended Complaint.  Even if the Feder Law Office was a corporation, Plaintiff has still failed to establish that the Court may exercise general personal jurisdiction over the Feder Law Office. *See My Fabric Designs, Inc. v. F+W Media, Inc.*, 3:17-CV-2112-L, 2018 WL 1138436, at *4 (N.D. Tex. Mar. 2, 2018) ("The corporate defendant's place of incorporation and principal place of business are the "paradigm" forums where it is "at home.") (citing *BNSF Ry. Co. v. Tyrrell*, 137 S.Ct. 1549, 1558(2017) (quoting *Daimler AG v. Bauman*, 134 S.Ct. 746, 760 (2014)); *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)) (internal quotation marks omitted)); *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) ("It is, therefore, incredibly difficult to establish general jurisdiction [over a corporation] in a forum other than the place of incorporation or principal place of business.") (citations omitted).

(quoting *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985))).  "Defendants who '"reach out beyond one state" and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other state for consequences of their actions.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475 (citing *Travelers Health Assoc. v. Virginia*, 339 U.S. 643, 647 (1950))).  "Establishing a defendant's minimum contacts with the forum state requires contacts that are more than 'random, fortuitous, or attenuated, or of the unilateral activity of another party or third person.'" *Id.* (quoting *Burger King Corp.*, 471 U.S. at 475).

As noted *supra*, Plaintiff contends that because the Feder Defendants entered into a contract with PLG, a Texas entity, which made calls to Texas residents, including Plaintiff, the Feder Defendants have subjected themselves to personal jurisdiction in Texas [Dkt. 24 at 3].  The Feder Defendants argue that the Court does not have specific personal jurisdiction over them because even assuming that the phone calls were made to Plaintiff while he was in Texas, "Plaintiff has not plead[ed], with specificity[:] (1) the minimal contacts that each of the Feder Defendants had with the state of Texas; (2) any facts demonstrating that the exercise of jurisdiction over the said Defendants comports with traditional notions of fair play and substantial justice and/or (3) that the Defendants themselves created any contacts with the state of Texas" [Dkt. 30 at 11].

Plaintiff responds that his allegation that the Feder Defendants and PLG entered into a formal contractual agreement is sufficient to establish personal jurisdiction pursuant to the Court's prior decision in *Cunningham v. Florio*, 2018 WL 4473792, at *9.  In *Florio*, the Court found that:

> The Court finds that Plaintiff's allegations meet the prima facie burden for establishing specific personal jurisdiction over Commonwealth Servicing, DMB Financial, and Monmouth Marketing. "By entering into an agreement with a [Texas entity] that contemplates continuing activities geared towards residents of this

forum, [the Court] find[s] that [Monmouth Marketing, DMB Financial, and Commonwealth Servicing] purposefully availed [themselves] to the laws and protections of [Texas]," and therefore, "engage[d] in sufficient 'minimum contacts' with this forum to warrant specific personal jurisdiction." Plaintiff[] alleges that one or more of these defendants contracted together for the promotion of a Texas individual and a Texas entity's debt relief services, Amber Florio and the Florio Law Firm. Specifically, Plaintiff alleges that this agreement contemplates that the corporate defendants would direct call-recipients to Amber Florio and the Florio Law Firm, a Texas resident and a Texas entity. In addition, Plaintiff does, contrary to Defendants' assertion, claim in his live complaint that the Entity Defendants placed the calls to him in Texas: "[s]ome calls were directly made by Matthew's corporations [Commonwealth Servicing and DMB Financial" [Dkt. 52, para 16]; "Plaintiff discovered the call [sic] were being directly placed from Monmouth Marketing Group"

*Id*. at *9.

The instant case is distinguishable from *Florio*; here, Plaintiff does not offer any further factual support concerning the subject of the contract between the Feder Defendants and PLG or its connection to Texas, whereas in *Florio*, Plaintiff specifically alleged that the entities contracted with a Texas individual and entity for the promotion of a Texas individual and a Texas entity's debt relief services.  In the instant case, Plaintiff only avers that the Feder Defendants contracted with PLG; the Court notes that Plaintiff does not provide the Court with the purported contract entered into between the Feder Defendants and PLG or any allegations regarding the substance of the contract for the Court to determine whether the Feder Defendants have availed themselves of Texas law.  *See Moncrief Oil Int'l Inc. v. OAO Gazprom*, 481 F.3d 309, 313 (5th Cir.2007) (finding no specific personal jurisdiction in part because the contract was silent as to the location of performance, so the forum state was not the hub of the contract's activity).  Moreover, the Court cannot "reasonably infer that [the Feder Law Office's] telemarketing efforts targeted this state" because "the contacted phone number[s] [are] associated with an area code in Tennessee." *See Cunningham v. Capital Advance Sols., LLC*, CV 17-13050 (FLW), 2018 WL 6061405, at *9 (D.N.J. Nov. 20, 2018) (dismissing Plaintiff's claims for lack of personal jurisdiction on nearly

identical allegations).  As there is no indication that the Feder Law Office "entered into a contract with a Texas entity that create[d] a continuing relationship and obligation between the entities, wherein [the Feder Law Office] agreed to promote and refer callers to the Texas entity, in addition to being alleged to have made numerous calls to Texas," it cannot be concluded that the Feder Law Office "had 'fair warning' that litigation resulting from its contractual obligations could occur in this forum."  *See Florio*, 2018 WL 4473792, at *9; *see also Capital Advance Sols., LLC*, 2018 WL 6061405, at *9 (dismissing Plaintiff's Amended Complaint because "[t]he Amended Complaint does not explicitly assert that Capital directed its telemarketing activities towards New Jersey, as a result of its contractual agreement with EBF.").  Accordingly, Plaintiff's Amended Complaint contains insufficient allegations to establish specific jurisdiction over the Feder Law Office.[9]

As to Attorney Feder, Plaintiff does not allege that Feder is licensed in the state of Texas to practice law or that Feder actually made any of the alleged calls.  Further, any action Feder took in contracting as a representative of the Feder Law Office does not confer personal jurisdiction over Feder as an individual.  *See 21st Century Fin. Services, Inc. v. Mandelbaum*, A-10-CA-803 LY, 2011 WL 3844209, at *8 (W.D. Tex. Aug. 30, 2011), *report and recommendation adopted as modified sub nom. 21ST Century Fin. Services, LLC v. Manchester Fin. Bank*, A-10-CA-803-LY, 2011 WL 13108099 (W.D. Tex. Oct. 7, 2011) ("Because the Individual Defendants were merely acting in their corporate capacities on behalf of Manchester Bank in their dealings with Plaintiff,

---

[9] To the extent Plaintiff attempts to establish an alter ego theory by alleging the Feder Defendants entered into a contract with PLG and/or the allegedly violative phone calls were made on behalf of the Feder Defendants [Dkt. 24 at 3], such allegations are insufficient to establish an alter ego theory to pierce the corporate veil and establish personal jurisdiction over the Feder Defendants.  *See Del Castillo v. PMI Holdings N. Am. Inc.*, 4:14-CV-03435, 2016 WL 3745953, at *12 (S.D. Tex. July 13, 2016) ("Plaintiffs' pleadings are not sufficient to establish alter ego, whether between PMI Comercio and PMI Services or any of the other PMI Group entities, because Plaintiffs provide nothing more than bald assertions and conclusory allegations of an alter ego relationship."); *see also Bell v. Moawad Group, LLC*, A-17-CA-00073-SS, 2017 WL 2841679, at *6–7 (W.D. Tex. June 30, 2017) ("the Court cannot conclude Bell's minimal factual allegations and conclusory assertions are sufficient to show the Moawad Group is a façade for Bell's interests and activities.").

the fiduciary shield doctrine prevents the Court from exercising specific jurisdiction over them ...

although Defendant Mandelbaum signed and executed the Agreement, he did so in his capacity as

President and CEO of Manchester Bank, not in his individual capacity. Courts have rejected the

exercise of personal jurisdiction over the signatory on a contract who was acting in a representative

capacity for a corporation.") (citing *Pension Advisory Group, Ltd. v. Country Life Ins. Co.*, 771 F.

Supp. 2d 680 (S.D. Tex. 2011) (declining to exercise personal jurisdiction over defendant where

he signed the contract in his representative capacity on behalf of the corporation); *Cerbone v. Farb*,

225 S. W.3d 764,771 (Tex. App.–Houston [14th Dist.] 2007, no pet.) (holding that defendant did

not purposefully avail himself of Texas jurisdiction by signing a promissory note in his corporate

capacity on behalf his company) ); *Tyson v. Austin Eating Disorders Partners, LLC*, A-13-CA-

180-SS, 2013 WL 3197641, at *4 (W.D. Tex. June 21, 2013) ("There is no dispute McCallum had

a number of contacts with Texas, though all of those contacts were in his capacity as an AED

officer. Those acts are properly shielded from consideration, as McCallum was acting on behalf of

the corporation, and the corporation's actions cannot be imputed to McCallum

individually."); *Constr. Aggregates, Inc. v. Senior Commodity Co.*, 860 F. Supp. 1176, 1179 (E.D.

Tex. 1994), *aff'd sub nom. Constr. v. Senior Commodity*, 48 F.3d 531 (5th Cir. 1995) ("The

uncontroverted record shows that this contact with the state—negotiating the contract, returning

the signed contract to Texas, and performing the contract—was done solely in Doyle's capacity as

a corporate officer. . . Thus, Doyle's contacts made in connection with the contract do not count

in determining whether the court has jurisdiction over him.").

In sum, the Court may not exercise specific personal jurisdiction over Defendants Sanford J. Feder, Esq. and Law Office of Sanford J. Feder, LLC.[10] These Defendants should be dismissed for lack of personal jurisdiction; accordingly, the Court only considers the merits of Plaintiff's claims against Defendant PLG under Rule 12(b)(6).[11]

***Failure to State a Claim***

Because the Court lacks personal jurisdiction over the Feder Defendants, the Court lastly considers whether Plaintiff has failed to state a claim against PLG for: (1) violations of 47 U.S.C. § 227(b) of the TCPA; (2) violations of 47 U.S.C. § 227(c) of the TCPA; and (3) invasion of privacy [Dkt. 24 at 16].  PLG argues that "Plaintiff's [Amended] Complaint is nothing more than labels, conclusions and formulaic recitation of the elements of the TCPA, and it fails to provide the Defendants with sufficient information or fair notice of what the claim is and the grounds upon which it rests [Dkt. 30 at 8] and further that "Plaintiff fails to properly plead the elements for an invasion of privacy [claim]" [Dkt. 30 at 5].

### *Rule 12(b)(6) Standard*

A Rule 12(b)(6) motion to dismiss argues that, irrespective of jurisdiction, the complaint fails to assert facts that give rise to legal liability of the defendant.  The Federal Rules of Civil Procedure require that each claim in a complaint include "a short and plain statement . . . showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The claims must include enough factual allegations "to raise a right to relief above the speculative level."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, "[t]o survive a motion to dismiss, a complaint must

---

[10] Plaintiff has already been given opportunity to amend his Complaint and was directly aware of the potential issues with personal jurisdiction given that Defendants moved on similar grounds for dismissal in their First Motion to Dismiss [*see* Dkt. 14 at 7-11].

[11] The Court further notes that the TCPA does not specifically authorized nationwide service.  *See Gallegos v. Tygar*t, 2017 WL 4872887, at 3 (D.N.M. July 20, 2017).

contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "It follows, that 'where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Id*. In considering a Rule 12(b)(6) Motion, the Court must accept as true all well-pleaded facts contained in Plaintiff's Complaint and view them in the light most favorable to Plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).

### Section 227(b)

"Section 227(b) of the TCPA makes it unlawful for any person 'to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice . . . to any telephone number assigned to a . . . cellular telephone service for which the called party is charged for the call,' or 'to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party.'" *Cunningham v. TechStorm, LLC*, 3:16-CV-2879-S-BH, 2018 WL 3118400, at *3 (N.D. Tex. May 29, 2018), *report and recommendation adopted,* 3:16-CV-2879-S-BH, 2018 WL 3117529 (N.D. Tex. June 25, 2018) (quoting 47 U.S.C. § 227(b)(1)(A)(iii), (B)). "The TCPA defines 'automatic telephone dialing system' as equipment with the capacity to 'store or produce telephone numbers to be called, using a random or sequential number generator,' and to dial such numbers." *Id*. (quoting 47 U.S.C. § 227(a)(1)). "To state a claim under the TCPA for calls made to a cellular phone, a plaintiff is required to allege that a call was made to a cell or wireless phone by the use

of any automatic dialing system or an artificial or prerecorded voice and without prior express consent of the called party." *Id.* (citing 47 U.S.C. § 227(b)(1)(A); *Chambers v. Green Tree Servicing LLC*, No. 3:15-CV-1879-M-BN, 2017 WL 2693565, at *1 (N.D. Tex. June 20, 2017)).

Plaintiff has alleged sufficient facts to state a claim under § 227(b) of the TCPA against PLG. Specifically, Plaintiff alleges that he never consented to being contacted using an ATDS and that the calls he received were not related to any emergency purpose [Dkt. 24 at 10]. Plaintiff indicates that the calls were initiated using an ATDS as "[m]any of the calls started with a pre-recorded message after several seconds of dead air time" [Dkt. 24 at 9]. Additionally, Plaintiff specifies the frequency/times of the calls for one hundred and five (105) phone calls and identifies one of the telephone numbers as being connected to PLG [*see* Dkt. 24-6 at 5-7]. Such allegations present sufficient context to notify PLG of the conduct charged, as required by Rule 8. *TechStorm*, 2018 WL 3118400, at *4 (finding plaintiff alleged sufficient facts to state a claim under § 227(b) where plaintiff alleged that defendant called plaintiff without plaintiff's consent by means of an automatic dialing system, indicated the reasons why plaintiff believed defendant used an automatic dialing system, and specified the frequency and times of the calls); *Crawford v. Target Corp.*, 3:14-CV-0090-B, 2014 WL 5847490, at *4 (N.D. Tex. Nov. 10, 2014) (same); *Barnes v. Santander Consumer USA, Inc.*, 1:14CV01941, 2015 WL 12777362, at *1 (N.D. Ohio June 15, 2015) (holding plaintiff's allegations provided fair notice of her TCPA claims and were sufficiently pled where plaintiff explained that defendant did not have consent to call plaintiff and plaintiff alleged that a "period of silence is indicative of an automatic dialer"); *see also Hudak v. Berkley Group, Inc.*, No. 3:13-cv-00089-WWE, 2014 WL 354676, at *4 (D. Conn. Jan. 23, 2014) ("Prior to discovery, plaintiff need not explain the details of each defendant's role in the planning, funding, and executing defendants' alleged joint telemarketing scheme [in violation of the TCPA].

Nothing in Rule 8 prohibits collectively referring to multiple defendants where the complaint alerts defendants that identical claims are asserted against each defendant.").  Accordingly, Plaintiff has sufficiently stated a TCPA claim under § 227(b) against PLG to survive at the Rule 12(b)(6) stage. Defendants' Motion to Dismiss should be denied as to the § 227(b) claim against PLG.

### Section 227(c)

Plaintiff alleges that the phone calls "by the Defendants constitute multiple breaches of the TCPA by placing telemarketing calls to the Plaintiff without maintaining an internal do-not-call policy lost, without identifying the defendants by name in the pre-recorded messages, and not training their employees or agents engaged in telemarketing on the use of an internal do-not-call list" [Dkt. 24 at 16].  Section 227(c)(5) of the TCPA allows a private right of action for "a person who has received more than one telephone call within any 12-month period by or on behalf of the same entity" in violation of the prescribed regulations that Plaintiff details above.  47 U.S.C. § 227(c)(5).  47 C.F.R. § 64.1200(d) states that "[n]o person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity."  47 C.F.R. § 64.1200(d).

In the instant case, Plaintiff has not adequately pleaded his TCPA claim under § 227(c)(5) against PLG (or any other of the Defendants).  Plaintiff's allegations under this specific part of the statute constitute one (and at most two) sentence(s) and provide no detail whatsoever as to the nature or extent of these violations [*see* Dkt. 24 at 10-11, 16].  "[Section 227(c)] relates to a marketer's duty to prepare internal policies to receive and implement affirmative requests not to receive calls; Plaintiff does not allege that he made any such affirmative request to [the] Defendant[s], and therefore it is not clear how the provision was violated."  *See Bailey v. Domino's*

*Pizza, LLC*, 867 F. Supp. 2d 835, 842 (E.D. La. 2012) (court granted defendant's motion to dismiss plaintiff's claim because he did not allege that he made an affirmative request to not receive calls). Plaintiff's allegations fail to state a claim for relief under § 227(c).  *See Jung v. Bank of Am., N.A.*, 3:16-CV-00704, 2016 WL 5929273, at *9 (M.D. Pa. Aug. 2, 2016) (court dismissed Plaintiff's claim under § 227(c)(5) because "Plaintiff offers no facts plausibly demonstrating that she subscribed to the National Do-Not-Call Registry or that Defendants violated the FCC's prescribed regulations for protecting the privacy of residential telephone subscribers."); *see also Heidarpour v. Empire Capital Funding Group, Inc.*, No. 18-CV-00250-YGR, 2018 WL 3455809, at *2 (N.D. Cal. July 18, 2018) (denying motion for default judgment for claims under § 227(c)(5) where "with respect to the liability and damages allegations, plaintiffs do not specifically allege facts, or provide supporting evidence, to establish when and how anyone requested that the phone numbers at issue be placed on the National Do Not Call Registry.").  Plaintiff is not entitled to relief under § 227(c)(5).  Defendants' Motion to Dismiss should be granted as to the § 227(c) claim against PLG.

### Invasion of Privacy

In his Amended Complaint, Plaintiff alleges a claim for Invasion of Privacy, asserting that the "actions by the Defendants constitute multiple breaches of the Plaintiff's privacy and right to be left alone under common law in Texas" [Dkt. 24 at 16].  "There are two elements to an intrusion on seclusion cause of action: (1) an intentional intrusion, physical or otherwise, upon another's solitude, seclusion, or private affairs or concerns, which (2) would be highly offensive to a reasonable person."  *Morales v. Barnes*, 05-17-00316-CV, 2017 WL 6759190, at *4 (Tex. App.— Dallas Dec. 29, 2017, no pet.) (citing *Valenzuela v. Aquino*, 853 S.W.2d 512, 513 (Tex. 1993)). Texas courts "have consistently held that an intrusion upon seclusion claim fails without evidence

of a physical intrusion or eavesdropping on another's conversation with the aid of wiretaps, microphones, or spying." *Morales v. Barnes*, 05-17-00316-CV, 2017 WL 6759190, at *5 (Tex. App.—Dallas Dec. 29, 2017, no pet.) (citing *Soda v. Caney*, No. 05–10–00628–CV, 2012 WL 1996923, at *2–3 (Tex. App.—Dallas June 5, 2012, pet. filed) ("[Appellant] cites no authority, nor have we found any, where a Texas court concluded a party suffered an intrusion upon his seclusion absent evidence of a physical invasion or eavesdropping."). Plaintiff has failed to allege a physical intrusion into his seclusion or any act of eavesdropping by PLG. Further, Plaintiff fails to demonstrate that PLG intentionally intruded upon Plaintiff's privacy in such a way that would be highly offensive to a reasonable person. Plaintiff's sole, conclusory allegation that "actions by Defendants constitute multiple breaches of the Plaintiff's privacy and right to be left alone" is wholly insufficient to state a claim for invasion of privacy under Texas law [Dkt. 24 at 16]. Accordingly, Defendants' Motions to Dismiss under Rule 12(b)(6) for Plaintiff's Invasion of Privacy claim should be granted.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Court recommends that Defendants Mark D. Guidubaldi & Associates, LLC d/b/a Protection Legal Group ("PLG"), Law Office of Sanford J. Feder, LLC ("Feder Law Office"), and Sanford J. Feder, Esq.'s ("Feder") (collectively "Defendants") "Motion to Dismiss and to Strike Plaintiff's 'Amended Complaint'" [Dkt. 30] be **GRANTED IN PART AND DENIED IN PART**. Defendants Sanford J. Feder, Esq. and Law Office of Sanford J. Feder, LLC should be dismissed from the lawsuit for lack of personal jurisdiction. Plaintiff's claims under section 227(c) of the TCPA and for invasion of privacy should be dismissed for failure to state a claim. Plaintiff's section 227(b) claim against Defendant PLG should remain.

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this 11th day of January, 2019.**

Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE